# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT TACOMA

JOYCE C.,

                Plaintiff,

v.

NANCY BERRYHILL, Acting Commissioner of Social Security,

                Defendant.

Case No. 3:17-cv-05881-TLF

ORDER AFFIRMING DEFENDANT'S DECISION TO DENY BENEFITS

Joyce C. has brought this matter for judicial review of defendant's denial of her application for supplemental security income (SSI) benefits. The parties have consented to have this matter heard by the undersigned Magistrate Judge. 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73; Local Rule MJR 13. For the reasons set forth below, the Court affirms the Commissioner's decision denying benefits.

## I. BACKGROUND

On April 16, 2014, the plaintiff filed an application for supplemental security income benefits. Dkt. 8, Administrative Record (AR) 20. She alleged in her application that she became disabled beginning November 30, 2013. *Id.* Her application was denied on initial administrative review and on reconsideration. *Id.* A hearing was held before an administrative law judge (ALJ) on May 18, 2016. AR 43-78. Plaintiff and a vocational expert appeared and testified.

ORDER - 1

The ALJ found that plaintiff could perform jobs that exist in significant numbers in the national economy, and therefore that she was not disabled. AR 20-36 (ALJ decision dated August 16, 2016). The Appeals Council denied plaintiff's request for review on September 11, 2017, making the ALJ's decision the final decision of the Commissioner. AR 1. The plaintiff appealed that decision in a complaint filed with this Court on October 31, 2017. Dkt. 4; 20 C.F.R. § 416.1481.

Plaintiff seeks reversal of the ALJ's decision and remand for further administrative proceedings. She argues that the ALJ misapplied the law and lacked substantial evidence for her decision. The plaintiff contends that the ALJ erred in considering the medical opinion evidence in assessing plaintiff's residual functional capacity (RFC), and consequently in finding at step five that plaintiff can perform jobs existing in significant numbers in the national economy.

For the reasons set forth below, the undersigned concludes that the ALJ properly applied the law in weighing the medical opinion evidence and substantial evidence supports the decision. Consequently, the undersigned affirms the decision to deny benefits.

## II. STANDARD OF REVIEW AND SCOPE OF REVIEW

The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 416.920. If the ALJ finds the claimant disabled or not disabled at any particular step, the ALJ makes the disability determination at that step and the sequential evaluation process ends. *See id.*

The five steps are a set of criteria by which the ALJ considers: (1) Does the claimant presently work in substantial gainful activity? (2) Is the claimant's impairment (or combination of impairments) severe? (3) Does the claimant's impairment (or combination) equal or meet an impairment that is listed in the regulations? (4) Does the claimant have RFC, and if so, does this

ORDER - 2

RFC show that the complainant would be able to perform relevant work that he or she has done in the past? And (5) if the claimant cannot perform previous work, are there significant numbers of jobs that exist in the national economy that the complainant nevertheless would be able to perform in the future? *Keyser v. Comm'r of Soc. Sec. Admin.,* 648 F.3d 721, 724-25 (9th Cir. 2011).

The Court will uphold an ALJ's decision unless: (1) the decision is based on legal error; or (2) the decision is not supported by substantial evidence. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017) (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). This requires "'more than a mere scintilla,'" though "'less than a preponderance'" of the evidence. *Id.* (quoting *Desrosiers*, 846 F.2d at 576). If more than one rational interpretation can be drawn from the evidence, then the Court must uphold the ALJ's interpretation. *Orn v. Astrue,* 495 F.3d 625, 630 (9th Cir. 2007). The Court may not affirm by locating a quantum of supporting evidence and ignoring the non-supporting evidence. *Id*.

The Court must consider the administrative record as a whole. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014). The Court is required to weigh both the evidence that supports, and evidence that does not support, the ALJ's conclusion. *Id.* The Court may not affirm the decision of the ALJ for a reason upon which the ALJ did not rely. *Id.* Only the reasons identified by the ALJ are considered in the scope of the Court's review. *Id.*

### III.  THE ALJ'S CONSIDERATION OF THE MEDICAL EVIDENCE

Plaintiff asserts that the ALJ erred in rejecting one medical opinion, which pertained to her mental health.[1] The Court disagrees and concludes that the ALJ gave sufficient reasons to reject the opinion of examining psychologist Siobhan Budwey, Ph.D.

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Where the evidence is inconclusive, "'questions of credibility and resolution of conflicts are functions solely of the [ALJ]'" and this Court will uphold those conclusions. *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)). As part of this discretion, the ALJ determines whether inconsistencies in the evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant" in deciding how to weigh medical opinions. *Id.* at 603.

The ALJ must support his or her findings with "specific, cogent reasons." *Reddick*, 157 F.3d at 725. To do so, the ALJ sets out "a detailed and thorough summary of the facts and conflicting clinical evidence," interprets that evidence, and makes findings. *Id.* The ALJ does not need to discuss all the evidence the parties present but must explain the rejection of "significant probative evidence." *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted). The ALJ may draw inferences "logically flowing from the evidence." *Sample*, 694 F.2d at 642. And the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

---

[1] Ms. Plaintiff does not challenge the ALJ's RFC determination with respect to limiting effects of her physical impairments. *See* Dkt. 10, p. 3.

ORDER - 4

To reject the uncontradicted opinion of either a treating or examining physician, an ALJ must provide clear and convincing reasons. *Revels*, 874 F.3d at 654. When other evidence contradicts a treating or examining physician's opinion, the ALJ must still provide "specific and legitimate reasons" to reject that opinion. *Id.* "'The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Id.* (quoting *Magallanes*, 881 F.2d at 751). In either case, the ALJ's reasons must be supported by substantial evidence in the record. *Lester v. Chater,* 81 F.3d 821, 830-31 (9th Cir. 1995).

A.  The ALJ's Consideration of Medical Evidence at Steps Four and Five

Before determining at steps four and five whether the plaintiff is disabled, the ALJ performed a more detailed assessment of the medical evidence to arrive at plaintiff's residual functional capacity (RFC). The Commissioner uses a claimant's RFC assessment at steps four and five to determine whether he or she can perform his or her past relevant work and whether he or she can do other work. SSR 96-8p, 1996 WL 374184 *2. The RFC is what the claimant "can still do despite his or her limitations." *Id.* The ALJ based her assessment of plaintiff's RFC on an examination of the medical evidence, and in part on her rejection of Dr. Budwey's opinion that plaintiff's mental impairments would significantly limit her ability to perform functions necessary to hold a job. AR 25, 31-34.

The ALJ found that plaintiff had the RFC

**to perform a range of light work as defined in 20 CFR 416.967(b). The claimant can lift 20 pounds occasionally and 10 pounds frequently. She can sit stand and walk each 6 hours in an 8-hour workday for a combined total of 8 hours of activity. She can occasionally climb ladders, ropes and scaffolds, ramps and stairs. She can occasionally balance. She can frequently stoop, crouch, kneel and crawl. She must avoid exposure to vibration and hazards in the workplace. She can understand, remember and carry out simple**

ORDER - 5

**instructions for uncomplicated tasks that deal primarily with objects rather than people. She can work in a predictable setting with no hourly production pace, no public contact and no teamwork assignments.**

AR 25 (emphasis in original).

Using this RFC, the ALJ determined at step four that plaintiff could not perform her past work as a laborer, fundraiser, or child monitor. AR 34. Plaintiff does not challenge that finding.

Finally, the vocational expert testified that a person with plaintiff's RFC could work as a garment folder, router, or deli cutter/slicer. AR 72-73. Based on that testimony, the ALJ found plaintiff not disabled at step five. AR 35.

B.  The ALJ Gave Legally Sufficient Reasons to Discount Dr. Budwey's Opinion.

    1.  Dr. Budwey's Examining Opinion

Dr. Budwey performed a psychological evaluation of the plaintiff in June 2014. She reviewed psychological evaluations from February 2011 and May 2012, conducted a clinical interview and mental status examination, and made clinical findings. AR 468-72. In a mental status exam, Dr. Budwey made unremarkable observations about the plaintiff's appearance, speech, and attitude and behavior. AR 471. She observed that plaintiff's "tearfulness, facial expressions, and fair eye contact" showed sadness and anxiety, and that plaintiff displayed "a restricted range of affect." AR 472. Dr. Budwey found, based on testing, that plaintiff's orientation, memory, fund of knowledge, concentration, abstract thought, and insight and judgment were not "within normal limits." *Id.*

Dr. Budwey diagnosed plaintiff with generalized anxiety disorder and "Major Depressive Disorder, Recurrent, Severe Without Psychotic Features." AR 469. She made a provisional diagnosis of alcohol dependence and a "rule out" diagnosis of panic disorder with agoraphobia. *Id.* Dr. Budwey opined that plaintiff would have severe limitation in completing a normal

ORDER - 6

workday and workweek without interruptions from psychological symptoms and marked limitations in numerous other areas of comprehension, communication, and behavior. AR 470. She opined that plaintiff "is unable to work at this time, but once she becomes more stable she may be able to return to work." AR 471. She estimated that plaintiff's impairment would last 9-12 months. *Id.*

### 2. The ALJ's Analysis of Dr. Budwey's Examining Opinion

The ALJ gave "limited weight" to Dr. Budwey's opinion. AR 31. First, the ALJ found that Dr. Budwey's evaluation lacked "the type of significant clinical abnormalities to substantiate the opinion." *Id.* The ALJ noted that Dr. Budwey instead found that plaintiff "engaged well and answered questions openly, made fair eye contact and was cooperative" and "had normal thought process and content, and perception." *Id.*

Second, the ALJ concluded that Dr. Budwey's opinion was "inconsistent with findings of treatment provider Dr. Luttrell," who noted that plaintiff showed no signs of depression, anxiety, or agitation at her visits. AR 31; *see* AR 531, 573.

Third, the ALJ found that Dr. Budwey's opinion was "inconsistent with the opinion of treating psychiatric nurse ARN Lagden who found she had coherent thought processes, organized thoughts, full orientation, grossly intact memory, normal attention and concentration, and intact fund of knowledge during this time." AR 31; *see* AR 449-64.

Finally, the ALJ found that the "marked limitations" in Dr. Budwey's opinion "are inconsistent with the clinical findings and opinion of Dr. Rasmussen." AR 31; *see* AR 762-70.

### 3. The ALJ Gave a Specific and Legitimate Reason to Discount Dr. Budwey's Opinion.

The ALJ's final reason was specific and legitimate and supported by substantial evidence, and thus sufficient to discount Dr. Budwey's opinion.

Christina H. Rasmussen, Ph.D., completed a psychological evaluation of the plaintiff in February 2016. AR 765. She conducted a diagnostic evaluation and reviewed plaintiff's psychiatric progress notes from 2015. *Id.* She observed plaintiff's behavior, noting that she completed paperwork without difficulty and cooperated willingly in the exam. *Id.*

Like Dr. Budwey, Dr. Rasmussen noted that plaintiff had unremarkable appearance, speech, and attitude and behavior. AR 766; *see* AR 471. Also similar to Dr. Budwey, Dr. Rasmussen noted plaintiff's "depressed and anxious mood" and "blunted affect." AR 766, 769; *see* AR 472. Dr. Rasmussen, as Dr. Budwey had also done, recounted plaintiff's difficult personal history as a victim of sexual abuse, continuing struggles with mental health and substance abuse, and criminal history. AR 766-67; *see* AR 470-71. Dr. Rasmussen noted that plaintiff reported having difficulty with concentration and memory. Dr. Rasmussen performed several cognitive tests with mixed results. AR 768; *see* AR 472.

Even though some of Dr. Rasmussen's and Dr. Budwey's observations were similar, Dr. Rasmussen reached different conclusions and expressed a different opinion as to plaintiff's limitations. Dr. Rasmussen found that plaintiff showed sound judgment and a fund of knowledge that was mostly intact, and found plaintiff had "some difficulty completing serial sevens." AR 769. Noting that plaintiff "denied any difficulties getting along with others," she opined that plaintiff "will likely have no interpersonal difficulties in a variety of settings." *Id.* She noted the plaintiff's "primary functional limitations appear to be related to the emotional impact of her traumatic history." *Id.* But, she concluded, with plaintiff's present regimen of "psychotherapy,

ORDER - 8

psychotropic medication, and substance abuse treatment several times per week . . . , her prognosis for improvement is good." *Id.*

Because Dr. Budwey's opinion was contradicted by Dr. Rasmussen's, to discount it the ALJ was required to give specific and legitimate reasons that are supported by substantial evidence. *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995). The ALJ did so by pointing toward the inconsistency between Dr. Rasmussen's opinion and Dr. Budwey's.

Plaintiff contends that the ALJ failed to explain this inconsistency. An ALJ "must do more than offer his conclusions" in weighing medical opinion evidence. *Reddick*, 157 F.3d at 725. But "'if the agency's path may reasonably be discerned,'" the Court may not reverse an ALJ's decision because it is explained "'with less than ideal clarity.'" *Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012) (quoting *Alaska Dept. of Envtl. Conservation v. EPA*, 540 U.S. 461, 497 (2004)) (internal quotation marks omitted). Although this Court may affirm only based on reasons given by the ALJ, the Court is required to consider the record as a whole in making a decision. *See Garrison*, 759 F.3d at 1009.

Here, although the ALJ's statement of her conclusion was brief, the ALJ's "path may reasonably be discerned" by reference to the ALJ's separate discussions of Dr. Rasmussen's opinion and the rest of the medical evidence. *See Garrison*, 759 F.3d at 1009; AR 25-34. As noted above, the ALJ correctly found that Dr. Rasmussen's opinion was inconsistent with Dr. Budwey's. In particular, whereas Dr. Budwey opined that plaintiff's symptoms would have a severe effect on her ability to complete a normal workday and work week and marked effects on most cognitive and behavioral work functions, Dr. Rasmussen opined that plaintiff "will likely have no interpersonal difficulties in a variety of settings" and "her prognosis for improvement is good" with her current regimen. AR 470-71, 769.

ORDER - 9

Identifying and resolving such conflicts "are functions solely of the [ALJ],'" and this Court will uphold those conclusions where substantial evidence supports them. *Morgan*, 169 F.3d at 601 (quoting *Sample*, 694 F.2d at 642). Likewise, the ALJ has primary responsibility to find and resolve material inconsistencies in the evidence and weigh medical opinions according to evidence the ALJ finds relevant. *Id.* at 603. The ALJ did so here.

The plaintiff contends that the ALJ erroneously relied on Dr. Rasmussen's opinion because the mental status exam that she performed had fewer categories than Dr. Budwey's exam, and because her opinion was largely based on plaintiff's self-reports. The plaintiff contends that Dr. Budwey based her opinions largely on objective observation and more extensive testing. The record shows it is pure speculation to suppose that Dr. Rasmussen based her opinion on plaintiff's self-reports to a greater extent than Dr. Budwey did. *See* AR 769. The Court notes that Dr. Rasmussen performed her examination more recently than Dr. Budwey and that, rather than using a check-the-box form as Dr. Budwey did, she provided several pages of narrative analysis in support of her opinion. AR 762-70.

Plaintiff's argument that the Court is required to compare two examining psychologists' evaluations, element for element, to determine which evaluation was more thorough goes beyond the Court's responsibility in reviewing the ALJ's decision for substantial evidence. *Cf. Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (holding that "relative imprecision of the psychiatric methodology" is not valid basis for rejecting examining psychiatrist's opinion).

"When presented with conflicting medical opinions, the ALJ must determine credibility and resolve the conflict." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). In particular, where the opinion of an examining doctor is based on independent clinical findings, the ALJ has discretion to disregard the conflicting opinion in another examining

ORDER - 10

doctor's diagnosis. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996). Here, the record supports the ALJ's finding of inconsistency between the two examining psychologists' opinions. *See* AR 471, 769. Therefore, the ALJ's decision to credit the opinion of one of those examining psychologist's opinion over that of another was within the ALJ's discretion. *See Saelee*, 94 F.3d at 522.

Dr. Rasmussen's opinion constitutes substantial evidence for the ALJ's decision discounting Dr. Budwey's opinion. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) ("Dr. Schatz's opinion alone constitutes substantial evidence, because it rests on his own independent examination of Tonapetyan."). Accordingly, the Court finds no error in the ALJ's assessment of this evidence. The Court does not need to address whether the other three reasons the ALJ gave were specific and legitimate and supported by substantial evidence, as the ALJ gave a valid reason that applies to the entirety of Dr. Budwey's opinion. *See Casey v. Colvin*, 637 F. App'x 389, 389-90 (9th Cir. 2016).

## CONCLUSION

Based on the foregoing discussion, the Court finds the ALJ properly determined plaintiff to be not disabled. The Commissioner's decision to deny benefits is therefore AFFIRMED.

DATED this 5th day of October, 2018.

*Theresa L. Fricke*

Theresa L. Fricke
United States Magistrate Judge

ORDER - 11